UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DANIEL G. MARKOVICH,**

    **Plaintiff,**

v.                                                   Case No. 8:09-cv-1376-T-30TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
    _____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was twenty-one (21) years of age at the time of his administrative hearing. He stands 6 feet tall and weighed 165 pounds. Plaintiff completed high school and was attending college studying graphic arts. He had some past work as a convenience store clerk and fast-food counter clerk. Plaintiff applied for Supplemental Security Income benefits (SSI)

in October 2005, alleging disability as of June 1, 2001, by reason of back and neck pain.[1] Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ.

Plaintiff testified he was a student seeking a graphic arts degree and taking about twelve hours per semester. He did not attempt more hours a semester because of his condition. He suggested he received some accommodation where he did not need to stay the full time in class. By his account, he is in pain all the time. He has had to re-learn how to do some things like bend down to pick things up because of his condition. He estimated that he could lift and carry about 10 to 15 pounds and that he could sit for 20 to 30 minutes before he experiences a lot of pain and has to lie down or find a way to take the stress off his back. He complained that sitting at the hearing was causing shooting pain up his neck and down his lower back. At home, he transitions between lying down and "kinda propped sitting up." He uses different techniques doctors have taught him so as not to hurt his back. He has difficulty walking distances and on inclines. He estimated that he can stand for 5 to 10 minutes, and on flat ground he can walk 10 to 15 minutes before he would have to sit down. He has difficulty bending at the waist, and he cannot squat. He has no difficulty using his hands and he can drive.

---

[1]In August 2008, Plaintiff sought to amend the onset date to April 2004. Given that the claim was one for SSI, the request was denied.

2

He uses a heating pad, stretching, ice, and medications like Vicodin and Soma, as well as heat patches for the pain. His medications make him tired, moody, and he cannot really think. He has undergone two surgeries but declined to have a third recommended by his doctor. His pain interferes with his concentration when it get worse. He was undergoing injections for the pain and they helped for about a week.

He uses his computer for his school work. When he hangs out with his friends, they watch television and movies, try computer stuff, or go get something to eat. Before his surgeries, he played soccer and lacrosse, but no longer. Other than class, sometimes he goes to the store or the mall. He has problems sleeping and finding a comfortable position because of his pain. When in high school, he received some accommodations like a permanent hall pass, help with his books, and a special desk. (R. 539-57).

The ALJ next took testimony from Nicholas Fidanza, a vocational expert ("VE"). Because of the Plaintiff's lack of earnings in 2002 through 2004, the ALJ first assumed no past relevant work. On a further assumption of an individual of Plaintiff's age and education with the ability to do sedentary exertional work with a sit/stand option at will, without sudden twisting of the back or crawling, and occasional climbing, balancing, stooping, kneeling, and crouching, but no climbing ladders, scaffolds, ropes, or at unprotected heights, nor operation of vibrating machinery, the VE identified jobs such as charge account clerk, order clerk, and ticket seller as work available to such an individual. On an additional assumption that the individual would need to lie down two hours in an eight-hour day, the VE opined no jobs were available. On questioning from Plaintiff's counsel, the VE indicated that such jobs

3

would allow for standing but might require the individual to tilt some to accomplish the work. (R. 557-61).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These records reflect that Plaintiff suffers from scoliosis and has undergone two surgeries to correct the condition with only partial success.

By his decision of October 1, 2008, the ALJ determined that while Plaintiff has severe impairments related to status post remote lumbar spine fusion and recent bulging disc of the cervical spine, he nonetheless had the residual functional capacity to perform sedentary exertional work with restrictions. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 14-22). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The opinion of Dr. Lauerman should have been given controlling weight;

(2) There is no substantial evidence to support the finding by the ALJ that the claimant's statements were not credible;

(3) The ALJ failed to assess the opinion of Dr. Lauerman regarding whether the claimant met a childhood listing. (Doc. 13 at 10).

The first and last claims relate to reports from Dr. William C. Lauerman, M.D. By his first claim, Plaintiff argues that the ALJ erred as a matter of law in discounting the doctor's opinions for lack of objective medical support. By this argument, two major fusions of the spine more than support the pain complaints and the law does not require objective evidence to support Dr. Lauerman's opinions. In any event, Plaintiff urges that there *is* objective support for the opinion. For instance, treating doctor, Dr. Libreros's notes reflect findings of status post spine surgery for scoliosis, chronic pain syndrome, cervical, thoracic and lumbar sprain/strain with radiculopathies, all which offer support for Plaintiff's pain complaints and the opinions of Dr. Lauerman. Similarly, the notes from treating doctor, Dr Moreno, reflect an abnormal EDX study in the upper extremities and right lower extremity and diagnoses for myofacial pain status post motor vehicle accident, cervicothoracic scoliosis and status post thoracic fusion in revision of T3-9. He urges further that the assessments of

6

nonexamining doctors which found Plaintiff limited to some sedentary work also support the opinions of Dr. Lauerman.

On his third claim, Plaintiff notes that Dr. Lauerman completed a report finding that Plaintiff met the childhood listing at Sections 101.03 and 101.04. (R. 191-92). He asserts that the ALJ erred in failing to address this finding and assign it some weight.

In response, the Commissioner notes that Dr. Lauerman rendered two separate opinions (R. 253-57, 385-89) and regardless of which is at issue (and such is not clear from Plaintiff's argument), the ALJ had good cause to discount each for the reasons indicated by the decision. The Commissioner notes that Dr. Lauerman treated Plaintiff in 2001 and 2002 and was no longer treating Plaintiff in 2007 and 2008 when he rendered his assessments. Because of the apparent lack of treating relationship during the later years, the Commissioner urges that such opinions are not entitled to controlling weight. In any event, substantial evidence supports the ALJ's conclusion that the assessments were conclusory and contradicted by the evidence of record. Additionally, the Commissioner notes that the extreme limitations imposed by this doctor are not revealed by any objective evidence. For instance, in January 2007, x-rays showed his back implant to be in good position and stable. These x-rays were nearly identical to those taken in November 2002, when the doctor concluded Plaintiff was doing well and was well-healed, and he imposed no functional limitations of the sort later determined in 2007 and 2008. The Commissioner urges that the ALJ also cited to other medical evidence contradictory to the doctor. Thus, the ALJ gave substantial weight to the opinion of Dr. Jack Lipps who examined Plaintiff in February 2006,

and the assessment of a nonexamining doctor, Dr. Andre Benson, M.D., who opined Plaintiff could do sedentary work with certain limitations.

On the third claim, the Commissioner urges that the ALJ was not obligated to consider the children's listings because Plaintiff was eighteen years old when he filed his application for SSI benefits and was no longer a child. Thus, while Plaintiff alleged an onset date in 2001, when he was a minor, because SSI benefits are not retroactive, an alleged onset date generally is irrelevant to the evaluation and need not be determined. In any event, while the ALJ had no duty to consider whether the Plaintiff met the child listing, the decision reflects that he did so.

The record reflects that Dr. Lauerman was Plaintiff's surgeon in operations performed in 2001 and 2002 to correct his scoliosis. (R. 465-529). By these records, the surgeries were partially successful. It appears that Plaintiff left Dr. Lauerman's full-time care in November 2002 when he moved. At that time, Dr. Lauerman noted that he was doing "very well," he was not taking any medication, and was back in school full time. (R. 467). In May 2006, the doctor completed a form from counsel indicating that Plaintiff suffered from impairments described in child listings at sections 101.03 and 101.04. *See* (R. 191-92). In January 2007, the doctor saw Plaintiff again and opined that, at that time, Plaintiff was disabled due to his scoliosis and the residuals of his two operations. Dr. Lauerman added that with rehabilitation and pain management, Plaintiff could eventually return to the workforce. (R. 390). In a functional capacity questionnaire dated July10, 2007, (R. 385-89) and one dated February 25, 2008, (R. 253-57) the doctor noted numerous limitations effectively rendering the Plaintiff disabled from work at any exertional level.

8

> In addressing Dr. Lauerman's opinions, the ALJ stated,
>
>> It is noted that on January 5, 2007, Dr. Lauerman opined that the claimant was disabled because of scoliosis (page F-140). To the extent that Dr. Lauerman's opinion was that this claimant may be disabled, it is noted that the issue of disability is reserved to the Commissioner and by delegation to the [ALJ]. The undersigned Judge has also considered the physical residual functional capacity (RFC) questionnaire completed by Dr. Lauerman on February 25, 2008, wherein the doctor indicated that this claimant can perform substantially less than sedentary work activity. The [ALJ] finds that a mere RFC without supportive objective evidence warrants little probative weight. Dr. Lauerman's RFC and statements seem to be magnified and not well supported by his own and other findings of record. For example, there is no objective evidence of spinal stenosis and/or root compression that would account for the level of pain claimant reports. Dr. Lauerman's assessments seem to be based on claimant's self-serving subjective complaints and not on objective examinations. Even on the more recent physical examination conducted by Dr. Lauerman, claimant had a normal gait and was able to heel walk and toe walk without difficulty. He had a markedly limited range of forward flexion to only 30 degrees and could extend his spine to about 20 degrees, but was able to do deep knee bend. On neurological testing, he had intact light touch sensation throughout his body and motor strength was 5/5 (strong and symmetric) in all groups. There is no evidence of pain behavior perceived by Dr. Lauerman. The objective findings shown on radiographic studies and on physical examinations of record do not account for the extreme limitations alleged by claimant and indicated on Dr. Lauerman's questionnaire and opinion. (page F-276).

(R. 20).

Initially, to the extent that Plaintiff urges error because the ALJ *required* objective evidence to support the opinions of this doctor, he simply misreads the decision. A fair reading of the whole decision reflects that the ALJ recognized there was objective medical evidence of Plaintiff's spinal impairments but none which supported the highly limiting RFC assessment of this doctor by which Plaintiff was disabled from all work. In any event, as reflected above, the ALJ also expressly noted that Dr. Lauerman's RFC was not supported by his own or other medical findings of record. Thus, citing to Dr. Lauerman's most recent

9

office note from January 5, 2007, the ALJ noted his findings of markedly limited range of forward flexion but also normal gait, heal and toe walk without difficulty, deep knee bending, intact sensory and motor signs throughout, and the fact that Dr. Lauerman noted there was "absolutely no evidence of pain behavior." (R. 26, 390). In addition, the decision reflects the ALJ's consideration of the reports from Dr. Charles Finn, M.D.,[2] Dr. Jack Lipps, M.D.,[3] Dr. Anthony Moreno, M.D.,[4] and the assessments by state agency nonexamining doctors. By my consideration of these records and the records as a whole,[5] the conclusion to discount Dr. Lauerman's assessment as inconsistent with his own and other medical reports is supported by

---

[2]Dr. Finn treated Plaintiff in March and April 2006. His notes reflect findings that, "[n]eurologically [Plaintiff] is completely intact and stabled except for the paresthesias in his neck. Upper and lower are intact." (R. 403). After confirming a bulging disc in the cervical spine, the doctor prescribed conservative treatment with trigger point injections. (R. 402).

[3]Dr. Lipps examined Plaintiff in February 2006. By his examination, Plaintiff suffered severe kyphoscoliosis and related back pain despite his two surgeries. He described decreased range of motion in the back with moderate back pain. Functionally, he found the Plaintiff capable of walking, standing, and sitting for short periods, and lifting, carrying and handling light objects. (R. 415).

[4]Dr. Moreno treated Plaintiff for his pain for a period in 2007 and 2008, using injections, medications and a TENS unit. (R. 195-252, 331-84). The notes reflect Plaintiff's continuous complaints of pain. While Plaintiff is correct that an EDX test revealed evidence of cervical radiculopathy, the same note from Dr. Moreno noted Plaintiff was in no acute distress, had no significant muscle atrophy, had full active range of motion, 5/5 motor strength, and symmetric sensory. The doctor recommended at that time that Plaintiff exercise, use a TENS unit, and undergo physical therapy. (R. 367). As the ALJ noted in the decision, Dr. Moreno indicated in a questionnaire that Plaintiff's motor strength was 5/5 and intact bilaterally in both the upper and lower extremities and that his grip strength was symmetric. (R. 331).

[5]Plaintiff also cites to the treatment records from Dr. Libreros in support of this claim. These records are not expressly addressed by the ALJ. Nonetheless, my review of these records reveals little to assist Plaintiff's claim. The records show conservative treatment with medications and little else. (R. 258-314).

substantial evidence.[6] In sum, while Plaintiff undoubtedly has a significant impairment in his back, the ALJ's conclusion that the objective findings shown on radiographic studies and on physical examinations do not support the extreme limitations assessed by Dr. Lauerman is supported by substantial evidence, and Plaintiff is not entitled to relief on this claim.

Plaintiff is not entitled to relief on his third claim either. Contrary to Plaintiff's assertion, the ALJ did consider Dr. Lauerman's form addressing child listings. *See* (R. 20). As the decision reflects, upon his consideration, the ALJ rejected that Plaintiff met a child listing based on his review of the medical findings. *Id.* In this Circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing in order to prevail. Similarly, where the plaintiff claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986). Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). As set forth above, I have concluded that there was adequate basis in the medical record to permit the ALJ to discount this doctor's assessments and here, Plaintiff fails to demonstrate error in the ALJ's conclusion that Plaintiff did not meet a childhood listing.

---

[6]The parties also dispute that Dr. Lauerman was a treating doctor at the time he rendered his assessments in 2007 and later in 2008. By Plaintiff's account, he was, and thus his opinions are entitled to great weight. By the Commissioner's account, there was no treatment relationship at that time. I have given Plaintiff the benefit of the doubt and employed the treating doctor standard to his testimony. My conclusion is that even under that standard, the ALJ has stated adequate good cause to discount the doctor's opinions.

Finally, Plaintiff maintains that there is no substantial evidence to support the ALJ's credibility finding. He urges that the conclusion that Plaintiff's credibility was inconsistent with the overall objective evidence as well as his own testimony is simply unsupported in light of the medical evidence. Plaintiff urges that the conclusion that because he attended school he was less than fully credible is inappropriate given the actual testimony concerning his attendance in class and the accommodations afforded him. Further Plaintiff complains that the ALJ should not have based his credibility findings on his own lay observations.

Plaintiff is correct that in this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

Here, the ALJ credited Plaintiff with impairments which could reasonably be expected to produce the alleged symptoms, but not to the extent claimed. (R. 18). In

12

discounting Plaintiff's subjective complaints as disabling, the ALJ concluded that on the basis of the medical evidence, Plaintiff's school routine, his demeanor, and movements at the hearing, his subjective complaints and limitations were exaggerated. (R. 19). I conclude that when the decision is read as a whole, the ALJ has stated adequate reasons for discounting the subjective evidence. While I give little weight to the ALJ's observations of Plaintiff's ability to bend, sit and to stand at the hearing,[7] on the whole he has stated adequate reasons for discounting his complaints. Here, I again find that the ALJ has fairly reviewed and assessed the medical evidence to conclude that it fails to support the severity of the limitations claimed by the Plaintiff. On this medical record, I am obliged to conclude that such is supported by substantial evidence. Further, while Plaintiff was allowed accommodation at school, he was attending full-time and successfully, and he claimed a normal, if not particularly active, social life with friends. By his RFC, which is not specifically challenged on this appeal, the ALJ allowed a fair number of limitations to similarly accommodate Plaintiff. As the Commissioner urges, the medical records generally suggest that Plaintiff reported his medications were helping. There are few complaints of negative side effects to support Plaintiff's testimony in that regard. However, given the claimed side effects, the observation that Plaintiff was alert, focused and attentive at the hearing was not inappropriate or immaterial. Thus, on the whole, I find that the ALJ has adequately stated grounds for discrediting Plaintiff's subjective testimony to the extent he claimed total disability. Finally, I

---

[7]It is doubtful to me that these one-time observations reveal anything significant about Plaintiff's credibility, even if such observations are generally appropriate together with other evidence.

13

cannot agree with the Plaintiff's argument that the ALJ determined his RFC before assessing the subjective testimony.

IV.

For the foregoing reasons, on this application, I conclude that the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

> Respectfully submitted this
> 2nd day of June 2010.
>
> _____
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James S. Moody, Jr., United States District Judge
Counsel of Record